UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHRYN DALE,

                Plaintiff,

    v.

CAROLYN W. COLVIN, Commissioner of Social Security,

                Defendant.

Case No. C13-1224-RSL-BAT

**REPORT AND RECOMMENDATION**

Kathryn Dale appeals the denial of her benefits applications. She contends the ALJ erroneously evaluated the opinions of Victoria McDuffee, Ph.D., Bruce Eather, Ph.D., and Marfe Paluga, ARNP. *See* Dkt. 16. As discussed below, the Court is not persuaded by her arguments regarding Dr. McDuffee but agrees that the ALJ committed harmful error as to Dr. Eather and Ms. Paluga.[1] Accordingly, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

The ALJ held a hearing and subsequently issued a decision in which, utilizing the five-

---

[1] Ms. Dale also challenges the ALJ's step five findings. *See* Dkt. 16. Resolution of this issue would be premature in light of the Court's conclusion that the ALJ erred in assessing the medical evidence. Thus the Court will not address the issue further.

REPORT AND RECOMMENDATION - 1

step disability evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920, she found:

**Step one:** Ms. Dale had not worked since August 2006.

**Steps two and three:** Degenerative disc disease of the lumbar spine, attention deficit hyperactivity disorder ("ADHD"), and depression were severe impairments that did not satisfy the Listings. *See* 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Residual Functional Capacity ("RFC"):** Ms. Dale can perform light work. She is limited to sitting for a total of six hours in an eight hour workday, and standing and/or walking for a total of two hours in an eight hour workday. She requires a sit/stand option allowing her to alternate positions between sitting and standing. She is able to perform both simple and repetitive tasks and some detailed, complex tasks. She would need a job that offers some variety in work, and not be limited solely to routine and repetitive tasks. She is limited to occasional interaction with the public. She can accept supervision and perform work independently, as well as interact appropriately with supervisors and co-workers.

**Step four:** Transferability of job skills is not material to the determination of disability because the claimant is not disabled.

**Step five:** There are jobs that exist in significant numbers in the national economy that Ms. Dale can perform, and therefore she is not disabled.

Tr. 19-33. The parties agree the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

**A.  The ALJ did not err in assessing the opinions of Victoria McDuffee, Ph.D.**

Dr. McDuffee examined Ms. Dale and opined she had marked limitations in her abilities to relate appropriately to co-workers and supervisors, and interact appropriately in contact with the public; and severe limitations in her abilities to perform routine tasks, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior.[2] Tr. 375. The ALJ gave little weight to these opinions because (1) the evaluation was "based primarily on the claimant's self-reported

---

[2] A marked limitation causes "[v]ery significant interference with basic work-related activities" and a severe limitation results in an "[i]nability to perform one or more basic work-related activities." Tr. 373.

REPORT AND RECOMMENDATION - 2

symptoms and complaints," which the ALJ found less than fully credible; (2) the evaluation was conducted to determine Ms. Dale's eligibility for state assistance, and therefore she had an incentive to overstate her symptoms and limitations; (3) the opinions "lack[ed] sufficient evidence to support the degree of severity opined" and were "inconsistent with progress notes and objective mental status exams" discussed by the ALJ; and (4) the opinions were inconsistent with Ms. Dale's range of activities, which included, among other things, taking care of herself and her dogs, shopping in stores, attending medical appointments, going to the gym daily, and regularly volunteering at a food bank. Tr. 30-31, 28.

To reject Dr. McDuffee's opinions, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ms. Dale contends the ALJ did not give any valid reason to discount Dr. McDuffee's opinions, but her challenge touches on only three of the four reasons given by the ALJ. *See* Dkt. 16 at 18-20; Dkt. 18 at 8-12. She fails to include any argument that the ALJ erred in finding that Dr. McDuffee's opinions were inconsistent with her range of activities. This unchallenged reason is specific and legitimate. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may properly reject doctor's opinion that is inconsistent with claimant's activity level). Moreover, it is supported by substantial evidence because Ms. Dale's regular volunteer work at a food bank, which includes assisting in organizing and helping others pick up food items, *see* Tr. 28, is inconsistent with the marked and severe social limitations opined by Dr. McDuffee. Therefore, even assuming the ALJ erred as Ms. Dale argues, Ms. Dale has not carried her burden of establishing harmful error because the claimed errors would not negate the validity of the ALJ's finding. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (party attacking agency decision bears burden of establishing harmful error); *Carmickle v. Comm'r of*

*Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination). Accordingly, the Court recommends affirming the ALJ's treatment of Dr. McDuffee's opinions.

**B.     The ALJ erred in assessing the opinions of Bruce Eather, Ph.D.**

Dr. Eather reviewed Ms. Dale's medical records and opined she had moderate limitations in her ability to maintain attention and concentration for extended periods. Tr. 333. He explained, "Although sustained attention and pace may possibly wane on occasion, [claimant] is capable of managing at simple & complex tasks but likely to respond better to a predictable routine." *Id.* The ALJ gave significant weight to Dr. Eather's opinion that Ms. Dale could manage simple and complex tasks but did not address Dr. Eather's opinion regarding a predictable routine. *See* Tr. 29-30.

Ms. Dale contends the ALJ erred by purporting to give significant weight to Dr. Eather's opinions but failing to incorporate his opinion regarding a predictable routine into the RFC, which expressly provided that Ms. Dale "would need a job that offers some variety in work, and not be limited solely to routine or repetitive tasks." Dkt. 16 at 16 (quoting Tr. 24). The Commissioner responds that the ALJ was not required to discuss Dr. Eather's opinion regarding a predictable routine because this was merely a recommendation. Dkt. 17 at 11 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (ALJ did not err by failing to incorporate into RFC doctor's statement that appeared in section of report entitled "Recommendations" and was neither a diagnosis nor statement of claimant's functional capacity), and *Carmickle*, 533 F.3d at 1165 (ALJ did not err where doctor's "proposal was offered as a *recommendation*, not an imperative" (emphasis in original))).

The Court agrees with Ms. Dale. "The ALJ must consider all medical opinion evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted," SSR 96-8p. Here, Dr. Eather's opinion that Ms. Dale would do better in a predictable routine conflicts with the RFC, which requires a job with variety. The ALJ did not address this conflict, and therefore she erred. Although the Commissioner is correct that an ALJ does not err by failing to include a doctor's recommendations, as opposed to functional limitations, in an RFC assessment, it cannot be said that Dr. Eather's opinion regarding a predictable routine is a recommendation rather than a limitation. Indeed, instead of appearing under a section titled "Recommendations," as in *Valentine*, it came in Dr. Eather's narrative explanation for his opinion that Ms. Dale is moderately limited in her ability to maintain attention and concentration. Moreover, because the ALJ was silent as to Dr. Eather's opinion regarding a predictable routine, the Commissioner's attempt to resolve the issue in her favor amounts to an improper post hoc rationalization. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (court must "review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

The ALJ's error in failing to address Dr. Eather's opinion regarding a predictable routine was harmful because it could affect the RFC, which, in turn, could affect the ultimate disability determination. *See Molina*, 674 F.3d at 1115 (an error is harmless when it is "inconsequential to the ultimate nondisability determination" (citation omitted)). The Court thus recommends remanding for further proceedings so that the ALJ can fully address Dr. Eather's opinions. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative

proceedings is appropriate if enhancement of the record would be useful."); *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (remand is appropriate if additional proceedings can remedy defects in the original administrative proceedings).

**C.    The ALJ erred in assessing the opinions of Marfe Paluga, ARNP**

Treating nurse practitioner Ms. Paluga opined that Ms. Dale's "inattention, hyperactivity, and depression may cause inconsistency in her job performance/efficiency. There may be increased absences due to the mood disorder." Tr. 779. The ALJ gave weight to Ms. Paluga's opinion regarding inconsistency in Ms. Dale's job performance and efficiency but did not address the opinion regarding increased absences. Tr. 31.

Ms. Dale raises essentially the same arguments here as she did with Dr. Eather. She contends the ALJ erred because the ALJ purported to give weight to Ms. Paluga's opinions, but the RFC does not reflect Ms. Dale's difficulties with performance, efficiency, or absences. Dkt. 16 at 18. The Commissioner responds that the ALJ closely considered Ms. Dale's mental impairments and sufficiently incorporated the mental restrictions opined by Ms. Paluga. Dkt. 17 at 13. Further, the Commissioner argues that the ALJ did not need to discuss Ms. Paluga's opinion that there "may be increased absences" because such speculation was not significant or probative. *Id.* (citing *Vincent o/b/o Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need only "explain why significant probative evidence has been rejected")).

As a nurse practitioner, Ms. Paluga is considered an "other source" under the social security regulations. An ALJ's decision should reflect consideration of such opinions, SSR 06-3p, which can be rejected for germane reasons, *Molina*, 674 F.3d at 1111. Here, Ms. Dale is correct that although the ALJ stated she gave weight to Ms. Paluga's opinion regarding inconsistency in job performance and efficiency, the RFC erroneously fails to reflect this

REPORT AND RECOMMENDATION - 6

limitation. *See* SSR 96-8p. The Commissioner's arguments otherwise do not change the plain fact that the RFC does not account for inconsistent job performance or efficiency. *See* Tr. 24.

As to Ms. Paluga's opinion regarding increased absences, the Court is not persuaded by the Commissioner's argument that this opinion was not significant or probative because it was couched as a possibility by Ms. Paluga's use of the word "may." Significantly, the ALJ gave weight to Ms. Paluga's opinion that Ms. Dale "may" have inconsistent job performance and efficiency due to her mental impairments. Tr. 31. There is no basis, therefore, for the Court to conclude that the similarly worded opinion regarding increased absences is not significant or probative. This is an assessment that must be made by the ALJ. Her failure to do so was error.

The ALJ's errors as to Ms. Paluga's opinions were harmful because they resulted in an incomplete RFC. *See Molina*, 674 F.3d at 1115. The Court recommends remanding for further proceedings so that the ALJ can fully address Ms. Paluga's opinions. *See Benecke*, 379 F.3d at 593; *McCartey*, 298 F.3d at 1076.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reassess the opinions of Dr. Eather and Ms. Paluga, supplement the record and revise the RFC as necessary, and proceed with steps four and five.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **January 23, 2014.** If no objections are filed, the matter will be ready for the Court's consideration on **January 24, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the

date the objection is filed and served.  Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of January, 2014.

/s/ Brian A. Tsuchida
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8